## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| QIAN YE,<br>12408 Rivers Edge Drive<br>Potomac, MD 20854,<br><br>                    Plaintiff,<br><br>          v.<br><br>FRANK J. LARKIN, DOORKEEPER,<br>SERGEANT-AT-ARMS OF THE<br>UNITED STATES SENATE,<br>U.S. Capitol<br>Room S-151<br>Washington, DC 20510,<br><br>                    Defendant. | Case No. 1:17-cv-1332<br><br><br><br>JURY TRIAL DEMANDED |

## COMPLAINT

COMES NOW Plaintiff Qian Ye, by her undersigned counsel, and complains of Defendant U.S. Office of the Senate Sergeant at Arms, as follows:

## NATURE OF THE CASE

1. This is an action to recover damages for Defendant's unlawful discrimination and hostile work environment, in violation of the Congressional Accountability Act, 2 U.S.C. § 1311 ("CAA").

2. Plaintiff alleges that Defendant discriminated against her and subjected her to a hostile work environment based on her gender, national origin, and race.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the claims pursuant to 2 U.S.C. § 1408(a). Plaintiff (a) is a covered employee by virtue of her employment with Defendant; (b) completed counseling and mediation pursuant to 2 U.S.C. § 1402-03; and (c) timely filed this civil action.

4.   Venue is proper because Defendant formerly employed Plaintiff in the District of Columbia.

## THE PARTIES

5.   During the relevant time period, Plaintiff worked for Defendant and was an employee pursuant to the CAA.

6.   Defendant is an office of the U.S. Senate that is responsible for all Senate computer and technology support services, recording and photographic services, printing and graphics services, and telecommunication services.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7.   Plaintiff exhausted her administrative remedies pursuant to the CAA.

8.   On January 27, 2017, Plaintiff submitted her request for counseling.

9.   On March 9, 2017, Plaintiff requested mediation on her claims.

10.   Mediation as held on April 4, 2017, and the mediation period ended on April 10, 2017.

## FACTS

### *Plaintiff is a member of a protected class.*

11.   Plaintiff is female, of Chinese descent, and Asian.

12.   At all relevant times, Defendant knew that Plaintiff's gender is female, based on Plaintiff's physical appearance.

13.   At all relevant times, Defendant knew that Plaintiff's national origin is Chinese, based on Plaintiff's physical appearance, accent, and discussions about visiting family in China.

14.   At all relevant times, Defendant knew that Plaintiff's race is Asian, based on Plaintiff's physical appearance, accent, and discussions about visiting family in China.

### *Plaintiff had a record of excellent job performance.*

15.   Plaintiff began working for Defendant as a Senior Systems Engineer on July 21, 2014.

Plaintiff's job duties included managing and troubleshooting issues with Defendant's computer servers.

16. Plaintiff received excellent performance evaluation ratings during her employment with Defendant. Plaintiff's evaluators consistently recognized her ability to solve problems and to implement solutions to improve the server's functioning.

17. In October 2015, Chris Molander (male, white, not Chinese) became Plaintiff's first-line supervisor.

18. In the spring of 2016, Bryan Steward (male, white, not Chinese) became Plaintiff's second-level supervisor.

*Plaintiff's new supervisors treated her less favorably than her comparators.*

19. Plaintiff was the only female on Defendant's database team. All of Plaintiff's supervisors and coworkers were males.

20. In or around May 2016, Plaintiff requested leave to visit family in China. Mr. Molander approved Plaintiff's request for leave; however, he told her that Mr. Steward said that Plaintiff should not be permitted to take leave for such a long period of time, even though she had accrued leave and properly submitted a leave request.

21. In August 2015, Defendant hired Cris Benge (male, white, not Chinese) as a Principal Engineer. Mr. Benge's position was at the same level as Plaintiff's, and he also reported to Mr. Molander and Mr. Steward.

22. However, Defendant treated Mr. Benge more favorable than Plaintiff in several ways.

23. Mr. Benge was paid more than Plaintiff.

24. Although the Agency's policy permitted employees to telework only one day per week, Mr. Benge was allowed to telework full-time.

25. Upon his hiring, Mr. Benge was appointed as the team lead, even though Plaintiff was more qualified and had already worked for Defendant for nearly two years. The fact that he was never physically present in the office also made Mr. Benge an unexpected choice for team lead. Defendant never offered Plaintiff the team lead role.

26. Mr. Molander and Mr. Steward welcomed Mr. Benge's technical opinions at staff meetings, but when Plaintiff offered her opinions, Mr. Steward accused her of being insubordinate.

27. On numerous occasions between June and September 2016, Mr. Benge was permitted to deviate from industry standards when implementing database changes.

28. However, Plaintiff's supervisors criticized her when she was required to correct errors and database failures caused by Mr. Benge's actions.

*Defendant refused to meet with Plaintiff regarding an urgent work issue.*

29. On June 2, 2016, Mr. Benge directed Plaintiff to create a work order ticket to complete work on the system. Accordingly, Plaintiff created a work order ticket to implement changes on June 16, 2016, at 4:00 a.m. Mr. Molander approved the ticket.

30. After a work order ticket is created, Defendant's employees are notified that the computer systems will be turned off for a certain period of time for maintenance. Employees may not access their computers during that time. Therefore, it is very important to do precisely the work described on the work order ticket at precisely the time stated.

31. On June 10, 2016, Mr. Benge created a document to implement the changes, but the document differed from the work order ticket. This inconsistency was problematic because employees would not know when their computer access would be interrupted for maintenance.

32. On June 13, 2016, Plaintiff emailed Mr. Molander to ask for clarification about the work that needed to be done. Plaintiff respectfully explained her technical opinion to Mr. Molander.

33. Mr. Molander refused to provide clarification and guidance about how to complete the work. Plaintiff could not complete the work without his approval. Plaintiff could have disciplined if she either did not follow the instructions on the work order dated June 2, 2016, or did not change the work order to reflect the instructions per the document Mr. Benge created on June 10, 2016.

34. Mr. Molander suggested meeting to discuss the matter on June 16, 2016. Plaintiff explained that they needed to meet before then because the work was scheduled to be performed at 4:00 a.m. on June 16, 2016. Plaintiff suggested meeting the following day, June 14, 2016. Mr. Molander agreed, responding, "Fine, we'll talk about it tomorrow at the meeting."

35. On, June 14, 2016, Plaintiff attended the team meeting with Mr. Benge and Mr. Molander.

36. When Plaintiff initiated a conversation about the details of the work order, Mr. Molander banged his hands on the table and yelled, "Stop, stop, stop!"

37. Plaintiff stopped talking and remained quiet for the rest of the meeting. She was humiliated, and she did not understand why Mr. Molander was so angry. He told her they should discuss the work order during the meeting on June 16, 2017.

38. Plaintiff believes Mr. Benge and her supervisors were upset that she disagreed with Mr. Benge's technical opinion. They became frustrated with Plaintiff when she asked for clarification, but allowed Mr. Benge to explain his opinion.

*Defendant falsely accused Plaintiff of misconduct and disciplined her.*

39. On June 20, 2016, Mr. Steward issued Plaintiff a verbal and written counseling for alleged attendance issues and insubordination.

40. The written counseling memorandum alleged that Plaintiff had been observed arriving to work late and leaving early on several occasions during the preceding two weeks.

41. Defendant's reasons for counseling Plaintiff were false and were pretext for discrimination. Plaintiff's time records show that she worked seven straight days during the week of June 13, 2016, totaling nearly 60 hours. With the exception of June 13, 2016, on which Plaintiff worked 11 hours, Plaintiff arrived at the office before 8:00 a.m., and left after 4:30 p.m., on each day that week.

42. Further, Plaintiff's schedule has always been flexible because she frequently needed to adjust it to perform system maintenance early in the morning before normal work hours. None of Plaintiff's supervisors, including Mr. Steward or Mr. Molander, had ever indicated that her attendance was an issue.

43. The counseling memorandum also alleged that during the staff meeting on June 14, 2016, Plaintiff twice refused to abide by her supervisor's request to defer the conversation about system maintenance to a meeting later in the day. Mr. Steward wrote that he expected Plaintiff to "Voice [her] opinions on technical matters to [her] team lead and supervisor in a professional manner and as appropriate."

44. These allegations were also false and are pretext for discrimination. Per email correspondence on June 13, 2016, Mr. Molander agreed to discuss the system maintenance issue during the meeting on June 14, 2016. Plaintiff appropriately raised the issue during the June 14 meeting. Mr. Molander yelled at Plaintiff and pounded the table; she immediately followed his instruction to stop talking.

45. Mr. Steward and Mr. Molander allowed Plaintiff's colleagues, who were male, not Asian, and not Chinese, to voice their opinions and ideas. However, they refused to let Plaintiff do the same, despite her qualifications, experience, and excellent performance record.

46. Plaintiff disagreed with the counseling, but did not oppose it at that time because she did not

want to cause trouble or face retaliation.

### *Plaintiff repaired audit failures on Mr. Benge's project.*

47. Mr. Molander instructed Plaintiff to work on one of Mr. Benge's projects while Mr. Benge was on vacation from June 27 to July 1, 2016. Plaintiff had not previously been involved with that project.

48. Plaintiff discovered that some of the changes Mr. Benge made to the system had caused audit failures. She informed Mr. Molander of the issue, and he agreed that Plaintiff should make necessary changes to repair the audit failures.

49. On June 28, 2016, Plaintiff created a work order ticket to perform the changes on June 30, 2016. Mr. Molander approved the ticket.

50. On June 30, 2016, Plaintiff made the changes, as described on the work order ticket.

51. When Mr. Benge returned from vacation, he was angry that Plaintiff had implemented changes to his project.

52. On July 22, 2016, Mr. Steward informed Plaintiff, "I will have [human resources] settle things between you and Cris Benge."

53. Management refused to support Plaintiff, even though Mr. Molander specifically instructed her to work on the project and make repairs necessitated by Mr. Benge's errors.

### *Defendant suspended Plaintiff for performing her job duties.*

54. On July 21, 2016, Mr. Molander was out of the office on sick leave. Anthony Golding was Plaintiff's acting supervisor that day.

55. When Plaintiff arrived to work, Mr. Golding informed her team that Mr. Benge had resigned.

56. On July 25, 2016, Plaintiff was on-call to perform system maintenance on the database in case of any emergencies. That morning, Plaintiff's computer alerted her that the system had

crashed, and emergency maintenance was required.

57. At 5:00 a.m. on July 25, 2016, Plaintiff fixed the problem. However, her computer continued to alert her of backup errors.

58. Plaintiff noticed that the database auditing feature had been turned off for weeks, meaning that if the computer was hacked, it would be almost impossible to trace security breaches.

59. Plaintiff turned on the audits to try to prevent database failures, which was consistent with industry standards. Plaintiff immediately emailed the change notification to Mr. Golding.

60. Plaintiff did not consult Mr. Benge because she believed he had resigned. She did not contact Mr. Molander because he was out of the office.

61. On August 5, 2016, Mr. Steward issued Plaintiff a memorandum stating that she was being suspended without pay for one week because of "continued insubordination, failure to follow a supervisor's instructions, and to perform duties as directed by [her] supervisor and team lead."  The memorandum alleged that between June 30 and July 1, 2016, Plaintiff implemented changes to the system in a configuration that Mr. Benge and Mr. Molander had previously denied.

62. Defendant's reasons for suspending Plaintiff are false and are pretext for discrimination. Mr. Molander specifically instructed Plaintiff to work on Mr. Benge's project while Mr. Benge was away on vacation. Plaintiff discussed the audit failures with Mr. Molander, and he agreed that she should perform the repairs. Plaintiff submitted a work ticket, which Mr. Molander approved, and made the changes as directed and scheduled.

63. The suspension memorandum further alleged that on July 25, 2016, Plaintiff re-enabled SQL Audits without approval from her team lead, Mr. Benge. This reason is also false and pretext for discrimination. Plaintiff alerted Mr. Golding, who was her acting supervisor at that time.

Plaintiff did not seek Mr. Benge's approval because she was told that he had resigned. Plaintiff later learned that, on information and belief, Mr. Benge negotiated some kind of agreement with Defendant and decided not to resign.

64. Plaintiff served her one-week suspension from August 6 to August 12, 2016.

*Defendant fired Plaintiff based on the same false allegations for which she was suspended.*

65. After returning from her suspension, Plaintiff continued to focus her efforts on improving and optimizing the system. Plaintiff worked on five main projects and sent status reports to her supervisor each week.

66. At the end of August, Plaintiff hosted a session to teach co-workers about the Database Management Tool that she had developed for Defendant.

67. On September 27, 2016, Jay Moore informed Plaintiff that her employment was being terminated for "persistent insubordination, failure to follow instructions, and failure to perform duties as directed by [her] supervisor and team lead."

68. However, the memorandum did not provide a single example of misconduct, aside from the alleged incidents for which she had already been suspended.

## COUNT 1

(2 U.S.C. § 1311 – Discrimination on the Basis of Sex and National Origin)

69. Plaintiff repeats and realleges paragraphs 1–68, above, as if fully set forth herein.

70. Defendant discriminated against Plaintiff on the basis of sex, national origin, and race.

71. By and through its conduct, Defendant violated the CAA.

72. Defendant's actions were intentional, reckless, and malicious.

73. As a result, Plaintiff has suffered damages including lost wages and benefits, pain and suffering, emotional distress, and mental anguish.

## COUNT 2

(2 U.S.C. § 1311 – Hostile Work Environment on the Basis of Sex and National Origin)

74.   Plaintiff repeats and realleges paragraphs 1–73, above, as if fully set forth herein.

75.   Defendant subjected Plaintiff to harassment and a hostile work environment on the basis of

sex, national origin, and race.

76.   By and through its conduct, Defendant violated the CAA.

77.   Defendant's actions were intentional, reckless, and malicious.

78.   As a result, Plaintiff has suffered damages including lost wages and benefits, pain and

suffering, emotional distress, and mental anguish.

## JURY DEMAND

Plaintiff demands a trial by jury on all Counts.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant on Counts 1 and 2, and award Plaintiff lost wages and benefits; compensatory damages in the amount of $300,000, or an amount to be determined at trial, for pain and suffering and emotional distress; pre- and post-judgment interest; costs; attorneys' fees; and any such other relief as is just and proper.


Date:   July 6, 2017                                  RESPECTFULLY SUBMITTED,

Alan Lescht and Associates, P.C.

By:   ___/s/_____

Alan Lescht [441691]
Sara McDonough [1022641]
1050 17th Street, NW, Suite 400
Washington, DC 20036
Tel:  (202) 463-6036
Fax:  (202) 463-6067

alan.lescht@leschtlaw.com
sara.mcdonough@leschtlaw.com
*Counsel for Plaintiff*